WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raul L. Maldonado,<br><br>　　　　Petitioner,<br><br>v.<br><br>Ryan Thornell, et al.,<br><br>　　　　Respondents. | No. CV-25-00121-TUC-AMM (LCK)<br><br>**REPORT AND RECOMMENDATION** |

  Petitioner Raul Maldonado, incarcerated at the Arizona State Prison in Safford, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Before this Court are the Petition and attached Supplement (Docs. 1, 1-1), Respondents' Answer (Doc. 15), and Petitioner's Reply (Doc. 20). Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Kimmins for Report and Recommendation. The Magistrate Judge recommends the District Court, after its independent review of the record, dismiss the Petition.

## FACTUAL AND PROCEDURAL BACKGROUND

  In the Superior Court of Pima County, on November 12, 1998, Petitioner was found guilty by a jury of First-Degree Murder, Burglary in the First Degree, Kidnapping, Aggravated Robbery, Aggravated Assault, and Aggravated Assault of a Minor Under Fifteen. (Doc. 15, Ex. C.) On January 29, 1999, the court sentenced Petitioner to life in prison for the murder, a consecutive term of 11 years for aggravated assault of a minor, and concurrent terms on the other crimes. (*Id.*, Ex. D.) Petitioner filed a timely notice of

appeal. (*Id.*, Ex. E.) The Arizona Court of Appeals provided the following factual summary of the crime:

> Maldonado and two others decided to steal some drugs from a residence where the victim was sleeping. When they arrived at the house, the driver, L., stayed in the car while Maldonado and his codefendant Celaya went to the house, apparently wearing ski masks, and broke in. The murder victim's aunt and ten-year-old cousin were sleeping in the living room. After gaining entry, Celaya pointed a gun at the aunt, asked, "where is he at," and then proceeded to the back bedroom where the victim was sleeping. Maldonado stayed at the door while Celaya shot the victim in the bedroom. Celaya then ran back to the living room and again pointed his gun at the aunt; a purse was stolen as he and Maldonado left. At trial, L. testified against Maldonado, as did M., a friend who claimed Maldonado had confessed to him after the crime. The testimony of other witnesses corroborated details of the testimony.

(*Id.*, Ex. J at 2.) The court of appeals affirmed Petitioner's convictions and sentences, with the exception of his sentence for aggravated assault on a minor, which was remanded for resentencing. (*Id.* at 10.) On remand, Petitioner was sentenced to 9 consecutive years on that aggravated assault charge. (*Id.*, Ex. L at 2.) He filed an appeal from that sentence. (*Id.*, Ex. O.) The Arizona Court of Appeals affirmed his resentencing, and the Arizona Supreme Court denied relief. (*Id.*, Ex. S.) The mandate issued on March 21, 2005. (*Id.*)

On September 20, 2001, Petitioner filed a Notice of Post-Conviction Relief (PCR). (*Id.*, Ex. M.) His appointed counsel filed a notice that he was unable to find any colorable claims, and he requested that the Court grant Petitioner additional time to file a pro se petition. (*Id.*, Ex. N.) Petitioner was granted time to file a petition but, when he did not do so, the PCR Court dismissed the PCR proceeding. (*Id.*, Ex. P.) On March 15, 2005, Petitioner filed a second PCR Notice. (*Id.*, Ex. R.) The PCR court summarily dismissed the Notice on March 24, 2005. (*Id.*, Ex. T.) Petitioner filed a third PCR Notice on May 12, 2005. (*Id.*, Ex. U.) The PCR court also summarily dismissed that Notice as untimely on June 14, 2005. (*Id.*, Ex. V.) Petitioner filed a fourth PCR Notice on April 6, 2011. (*Id.*, Exs. W, X.) The PCR court summarily dismissed the Notice finding the claims untimely and precluded. (*Id.*, Ex. Y.)

On April 15, 2021, Petitioner filed a fifth PCR Notice based on a 2020 case, and the court appointed counsel. (*Id.*, Ex. BB at 2.) Counsel sought a sentencing correction, which

was granted. (*Id.*) The court amended the original sentencing minute entry to reflect that Petitioner was eligible for parole after serving 25 years on the murder charge. (*Id.*) On May 8, 2024, Petitioner filed a sixth PCR Notice. (*Id.*, Ex. FF.) The court found a petition would be untimely and summarily dismissed the Notice. (*Id.*, Ex. GG.) Petitioner filed a Petition for Review, which was denied as untimely by the Arizona Court of Appeals on August 7, 2024. (Doc. 1-2 at 9.) That court denied reconsideration, and the Arizona Supreme Court denied review. (*Id.* at 3, 7.)

## DISCUSSION

On March 14, 2025, Petitioner filed a Petition for Writ of Habeas Corpus in this Court. Petitioner alleged four claims: (1) PCR counsel was ineffective and the PCR court erred in failing to rule on his pro se petition; (2) he was erroneously charged as an accomplice to the murder; (3) the charge of aggravated assault against a minor should have been dismissed by the judge for lack of evidence; and (4) he does not have a meaningful avenue for parole through the Arizona Board of Executive Clemency. (Doc. 1 at 6-9.) Respondents argue that the Petition is time-barred because it violates the statute of limitations, and the claims are procedurally defaulted.

**Statute of Limitations and Statutory Tolling**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, federal petitions for writ of habeas corpus filed by state prisoners are governed by a one-year statute of limitations period. 28 U.S.C. § 2244(d)(1). The limitations period begins to run from the latest of:

> (A) the date on which judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* "AEDPA's one-year statute of limitations in § 2244(d)(1) applies to each claim in a habeas application on an individual basis." *Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012).

In applying (d)(1)(A), the Court must assess when direct review of Petitioner's conviction became final. The court of appeals affirmed Petitioner's resentencing on April 13, 2004. (Doc. 15, Ex. S at 4.) The Arizona Supreme Court denied review on February 28, 2005.[1] Petitioner's conviction and sentences became final 90 days after, on May 30, 2005, when Petitioner's deadline to file a petition for writ of certiorari to the United States Supreme Court expired.[2] *See* Sup. Ct. R. 13.1 (stating that a petition for writ of certiorari to review a judgment entered by the state's highest court must be filed in the United States Supreme Court within 90 days after the entry of the judgment); *Harris v. Carter*, 515 F.3d 1051, 1053 n.1 (9th Cir. 2008).

Petitioner cites several cases that he suggests recognized a new constitutional rule and triggered a later limitations period under subsection (d)(1)(C). (Doc. 1 at 11.) Subsection (C) requires that the constitutional right be newly recognized by the United States Supreme Court, but Petitioner relied solely on cases from Arizona state courts or this district court. Because Petitioner has not identified a constitutional right that was newly recognized by the United States Supreme Court after May 30, 2005, the Court finds that subsection (d)(1)(C) does not provide a later statute of limitations period as to any claims.

Petitioner also argues that he did not discover the factual predicate of at least one claim until July 2021. This argument applies, if at all, only to Claim 1. Claims 2, 3, and 4

---

[1] Because this date was not provided in the record submitted by Respondents, the Court obtained it from the Arizona Court of Appeals' case docket: https://www.appeals2.az.gov/ODSPlus/caseInfolast.cfm?caseID=114384.

[2] Respondents contend Petitioner's judgement became final when the Arizona Court of Appeals issued the mandate on March 21, 2005. (Doc. 15 at 9.) Although this case would not have a different result if the mandate date were used, it does not mark finality of the judgment. *See Gonzalez v. Thaler*, 565 U.S. 134, 150-54 (2012) (holding that a judgement became final when the petitioner's time to seek further appellate review expired not when the state court issued the mandate) (citing *Jimenez v. Quarterman*, 555 U.S. 113, 119-20 (2009)).

fall under (d)(1)(A) and, absent tolling, the statute of limitations as to those claims expired on May 30, 2006.³

Rather than evaluating the applicability of the statute of limitations under (d)(1)(D) for Claim 1, the Court finds it most expeditious to resolve this claim based on cognizability. Claim 1 raises two related but separate issues, whether the state courts erred in their handling of Petitioner's PCR proceeding initiated in July 2021 and whether counsel appointed for that proceeding was ineffective. First, "[t]he ineffectiveness or incompetence of counsel during . . . State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Thus, Petitioner's claim that PCR counsel was ineffective is not a viable ground for relief in this proceeding. Second, "a petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings." *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989). Here, Petitioner alleges the PCR court should have ruled on his pro se petition, held an evidentiary hearing, and granted his motion for rehearing; the court of appeals erred in finding his petition for review untimely; and the Arizona Supreme Court abused its discretion in dismissing his petition for review as untimely and not compliant with the rules. (Doc. 1 at 6; Doc. 1-1 at 9-12.) Because these allegations, even if proven to be errors, do not call into question the constitutionality of Petitioner's incarceration, they are not cognizable in this proceeding. *See Hoffman v. Ryan*, No. CV-16-3598-PHX-SPL-JFM, 2017 WL 6021432, at *10 (D. Ariz. Sept. 14, 2017), report and recommendation adopted, 2017 WL 5989356 (D. Ariz. Dec. 4, 2017). Therefore, the Court finds that Claim 1 should be dismissed as not cognizable.

---

³ In his Reply, Plaintiff lists and addresses five claims, four of which are not in the Petition—prosecutorial misconduct based on a conflict of interest, a due process violation arising from failure to sever his trial from his codefendant's trial, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel. (Doc. 20). These "new" claims were not properly raised in the Petition and, therefore, the Court does not include them in its Report and Recommendation. However, the Court notes that the factual basis for these claims would have been known to Petitioner, at the latest, by the end of his second direct appeal. Therefore, the statute of limitations based on (d)(1)(A) would apply to them.

As stated above, absent tolling, the statute of limitations for Claims 2, 3, and 4 expired at the end of May 2006, and Petitioner did not file in this Court until 2025. The statute of limitations is tolled during the time a properly filed state PCR petition is pending. 28 U.S.C. § 2244(d)(2). In May 2005, when the statute of limitations began to run on Claims 2, 3, and 4, Petitioner had a PCR Notice pending. (Doc. 15, Ex. U.) Because it was dismissed as untimely (*id.*, Ex. V), however, it was not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2) and did not toll the statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005). Petitioner did not file his next PCR Notice until 2011, long after the statute of limitations had expired in 2006. A PCR filing after the expiration of the limitations period does not toll the period or trigger a new limitations period. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (holding that even a timely state petition filed after the expiration of the federal statute of limitations does not reinstate the federal period). Therefore, Petitioner is not entitled to statutory tolling of the limitations period under (d)(1)(A) for the PCR proceedings he initiated in 2011, 2021, and 2024. Due to the expiration of the statute of limitations in May 2006, Claims 2, 3, and 4 are statutorily time-barred.

**Equitable Tolling**

In the Petition, Petitioner states that the untimeliness of the Petition is not his fault because he has A.D.D. and was illiterate at the time he was convicted, he has had to teach himself and conduct his own research, and he relied upon his attorneys who did not advise him that his sentence on the murder charge did not allow him to seek parole.

Petitioner bears the burden of showing that equitable tolling is appropriate. *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006). Generally, a litigant seeking equitable tolling "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418. The diligence required for tolling is "reasonable diligence" as opposed to "maximum feasible diligence." *Doe v. Busby*, 661 F.3d 1001, 1012 (9th Cir. 2011). The effort needed is that expected of a reasonable person under those particular circumstances.

(*Id.* at 1015.) Furthermore, the petitioner must show that the extraordinary circumstances were the cause of his untimeliness. *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (quoting *Stillman v. LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003)).

Several of Petitioner's explanations fall into the same general category—he lacked legal representation and personal legal knowledge. However, "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." *Rasberry*, 448 F.3d at 1154. Although Petitioner's circumstances made it more challenging to manage his legal filings, his situation is not unique and did not make it impossible to file a federal petition on time.

Next, Petitioner contends that, due to his attorney's actions, he did not know he was ineligible for parole at the time of his sentencing and only learned that information in 2021. When attorney conduct (beyond attorney negligence) compromises a petitioner's ability to timely file a federal petition that may constitute an extraordinary circumstance for equitable tolling. *See Gibbs v. Legrand*, 767 F.3d 879, 885 (9th Cir. 2014). However, the Ninth Circuit has found an extraordinary circumstance only when attorney action directly inhibited a petitioner from timely filing, such as when an attorney prevented a petitioner from knowing that the federal statute of limitations had begun to run. *Id.* at 888 (involving attorney failure to fulfill promise to provide petitioner notice that PCR proceeding had concluded); *Rudin v. Myles*, 781 F.3d 1043, 1056-57 (9th Cir. 2015) (citing petitioner's inability to know that state court PCR petition was not timely filed). Here, Petitioner has not suggested that he lacked notice of when his two direct appeals or multiple PCR proceedings concluded. Thus, he had the necessary information to calculate his deadline for filing in federal court. No action by counsel is alleged to have prevented him from timely filing in this Court, therefore, counsel's conduct does not amount to an extraordinary circumstance.

Further, Petitioner's main challenge regarding parole eligibility is contained in Claim 1, which the Court has determined is not cognizable. Therefore, equitable tolling as to that claim is irrelevant. Claim 4 is related because Petitioner alleges that parole decisions

by the Arizona Board of Executive Clemency are illusory and offer no real chance of release. At the time Petitioner was sentenced, in 1999, he believed he was eligible for parole after 25 years. In September 2023, the state court clarified the ambiguity in the record and verified that he could seek parole after serving 25 years. The Arizona Board of Executive Clemency has been the entity making parole decisions in Arizona since 1994, or during the entire relevant period. Therefore, Petitioner could have raised a challenge to the Board's parole authority at the time his judgment became final in 2005. Or, at the latest, in September 2023, when his parole eligibility was confirmed. And he did not do so.

Finally, a reasonably diligent person would be expected to undertake preventative measures to ensure his petition is timely or, alternatively, have a well-supported reason for not filing in the 25 years after he was convicted and sentenced. If it was unclear whether Petitioner's claims would be timely, he could have filed a "protective" petition in this Court and asked the federal court to stay and abey the federal proceedings while he exhausted state court remedies. *See Pace*, 544 U.S. at 416-17 (citing *Rhines v. Weber*, 544 U.S. 269, 278 (2005) ("A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court")). The fact that Petitioner may not have possessed the legal knowledge about a particular claim or the option to file in this Court as a precaution to satisfy the statute of limitations does not qualify as an extraordinary circumstance. *See Ford v. Pliler*, 590 F.3d 782, 789 (9th Cir. 2009) (holding that ignorance of the law is not an extraordinary circumstance); *Rasberry*, 448 F.3d at 1153. Petitioner has failed to establish that something beside his own conduct made it impossible for him to timely file in this Court. *See Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011-13 (9th Cir. 2009) ("an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling.'").

Petitioner has neither established that he diligently pursued his rights nor that extraordinary circumstances prevented him from timely filing his Petition in this Court. *See Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) ("the threshold necessary to

trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.") (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). Therefore, he is not entitled to equitable tolling. Because Claims 2, 3 and 4 were filed in violation of the statute of limitations, and Petitioner has not established an excuse for their untimeliness, those claims are time-barred.

## RECOMMENDATION

Claim 1 is not cognizable. Claims 2, 3, and 4 are untimely.[4] Based on the foregoing, the Magistrate Judge recommends that the District Court enter an order DISMISSING the Petition for Writ of Habeas Corpus.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the District Court. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV-25-00121-AMM**.

Dated this 18th day of December, 2025.

Honorable Lynnette C. Kimmins
United States Magistrate Judge

---

[4] Because Petitioner's claims are untimely or not cognizable, the Court does not reach Respondents' arguments pertaining to procedural default.